KOTECKI & RADTKE, S.C., Plaintiff-Appellant,

v.

Shrenea JOHNSON and Robert Johnson, Defendants-Respondents,

MILLER BREWING COMPANY, Garnishee-Defendant-Respondent.

Court of Appeals

*No. 93–2919. Submitted on Briefs July 7, 1994.—Decided March 7, 1995.*

(Also reported in 531 N.W.2d 606.)

430

For the plaintiff-appellant the cause was submitted on the briefs of *Joseph Radtke* of *Kotecki & Radtke, S.C.*, of Milwaukee.

For the defendants-respondents and garnishee-defendant-respondent the cause was submitted on the briefs of *Richard E. Reilly* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   Kotecki & Radtke, S.C., a law firm, appeals from an order dismissing its garnishment action against Shrenea and Robert Johnson, and Miller Brewing Company. The case comes to us upon summary judgment.

Kotecki & Radtke sought to recover from Mr. Johnson and his employer, Miller Brewing, an underlying separate default judgment that the firm had secured against Ms. Johnson. The default judgment was for attorney's fees and costs incurred by the firm prior to its withdrawal as counsel for Ms. Johnson in her divorce action against Mr. Johnson.

The trial court dismissed the garnishment action, concluding that Kotecki & Radtke failed to state a valid claim for relief because the firm had improperly instituted a separate action to recover Ms. Johnson's unpaid attorney's fees instead of seeking a judgment from the divorce court when it withdrew as counsel.

We conclude that: (1) Kotecki & Radtke properly instituted a separate action to recover the unpaid attorney's fees; (2) the firm's garnishment complaint states a valid claim for relief; and (3) there remain genuine issues of material fact that leave this matter inappropriate for summary judgment. Therefore, we must reverse and remand the trial court order dismissing the garnishment action.

Kotecki & Radtke also asks us to review whether the trial court erred when it refused to disregard a trial brief submitted by Mr. Johnson and Miller Brewing in violation of the time limits set forth in the local court rules. We conclude that the firm's argument on this matter is without merit and that the trial court was acting well within its discretion when it refused to disregard the untimely response brief.

## I. BACKGROUND

In December 1991, Ms. Johnson retained Kotecki & Radtke to represent her in a divorce action against Mr. Johnson. She executed a retainer agreement with Kotecki & Radtke wherein she agreed to pay the firm

for all legal costs it incurred in connection with the divorce.

On January 2, 1992, Attorney Joseph Radtke, a partner with Kotecki & Radtke, appeared on behalf of Ms. Johnson at a hearing before an assistant family court commissioner. The commissioner issued temporary orders requiring Mr. Johnson to pay Ms. Johnson $1,678 per month in maintenance and child support. The commissioner made no specific order with respect to payment of each party's attorney's fees, but did order that each party was to pay his or her own outstanding bills.[1]

On February 8, 1993, Kotecki & Radtke filed a motion to withdraw as counsel for Ms. Johnson, stating that "the attorney/client relationship has been compromised to the point that further representation is no longer possible." The firm alleged, *inter alia*, that Ms. Johnson had wasted marital assets and could no longer pay her attorney's fees. We assume this motion to withdraw was granted and no attorney's fees were awarded, although the appellate record is silent on this issue.[2]

---

[1] The temporary order reads in relevant part:

1. RESP.   To pay per month: $1,678.00
   SUPPORT:   $1,508.00 per month
   MAINTENANCE:   $170.00 per month

. . . .

   ATTORNEY FEES:   No order.

. . . .

5. OUTSTANDING BILLS:   Each to pay own bills; parties to pay ½ of November telephone bill; ptnr. to pay for auto insurance.

[2] No court order granting the motion to withdraw is part of the record. There are several references, however, scattered throughout the documents before this court, alluding to the issuance of such an order.

Evidently, the Johnsons' divorce action proceeded through the court system without Kotecki & Radtke's further involvement—although once again, the record is silent on this point.

Before the final divorce judgment was entered, Kotecki & Radtke instituted a separate action against Ms. Johnson to collect the legal fees that she "neglected and refused to pay."[3] Ms. Johnson failed to answer the complaint, and the presiding court, on June 1, 1993, granted a default judgment of $2,830 for the unpaid legal fees and costs. On July 12, 1993, Kotecki & Radtke filed a garnishment action against the Johnsons, as well as Mr. Johnson's employer, Miller Brewing, seeking to garnish his wages to satisfy the default judgment the firm had obtained against Ms. Johnson. The firm later filed additional garnishment actions against Mr. Johnson and Miller Brewing that the trial court consolidated with the case at bar.

On August 27, 1993, Kotecki & Radtke filed a motion for summary judgment. Mr. Johnson and Miller Brewing's response brief was not filed until September 24. On October 18, a hearing was held on the summary judgment motion. At the hearing, Kotecki & Radtke requested that the court base its decision solely on the record as presented by Kotecki & Radtke's motion papers because opposing counsel's response brief was not filed within the time limits prescribed by the local court rules. The trial court determined that because neither party nor the court was prejudiced by the tardy filing, in lieu of disregarding the response brief and

---

[3] The divorce judgment is not part of the record. Further, the record is silent on what date the divorce judgment was entered. Neither party, however, disputes that Kotecki & Radtke instituted its separate action to collect the attorney's fees before the divorce judgment was entered.

accompanying papers, the court would assess $100 in costs to Mr. Johnson and Miller Brewing.

Addressing the merits of the summary judgment motion, the court determined that Kotecki & Radtke did not follow the statutory procedure for recovering attorney fees resulting from a divorce action. The court found that § 767.23, STATS., gave precedence to the family court in determining "the obligation of a client to a lawyer." The court reasoned that because Kotecki & Radtke did not follow the provisions of § 767.23, but instead instituted a separate action to recover the unpaid legal fees, the firm "ha[d] no claim at this time against Robert Johnson, the principal defendant, or against the Miller Brewing Company, the garnishee defendant." The court then entered a final order dismissing Kotecki & Radtke's garnishment action "with prejudice" and awarding costs to the defendants.[4] Kotecki & Radtke appeals from this final order entered on October 29, 1993.

## II. SUMMARY JUDGMENT

"Summary judgment is appropriate to determine whether there are any disputed factual issues for trial and 'to avoid trials where there is nothing to try.'" *Caulfield v. Caulfield,* 183 Wis. 2d 83, 91, 515 N.W.2d 278, 282 (Ct. App. 1994) (citation omitted). While we apply the same methodology as the trial court when reviewing summary judgment, we owe no deference to the conclusion of the trial court. *Novak v. American Family Mut. Ins. Co.,* 183 Wis. 2d 133, 136, 515 N.W.2d

---

[4] The court awarded costs of $67 to the defendants. This amount was set off by the court's previous assessment of $100 in costs for the defendants' untimely response brief, thereby resulting in a net award of $33 to Kotecki & Radtke.

504, 506 (Ct. App. 1994). We first examine the pleadings to determine whether they state a claim for relief. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315-17, 401 N.W.2d 816, 820-21 (1987). If the pleadings state a claim and the responsive pleadings join the issue, we then must examine the evidentiary record to analyze whether a genuine issue of material fact exists or whether either party is entitled to a judgment as a matter of law. *Id.*

### 1. The trial court's ruling.

Kotecki & Radtke challenges the trial court's determination that the firm "had no claim against" Mr. Johnson or Miller Brewing. As a basis for its conclusion, the trial court stated that its reading of § 767.23(3)(a), STATS.,[5] requires that the divorce court have "precedence" in "determining the [financial] obligation of a client to a lawyer" when an attorney seeks to withdraw as counsel. The trial court then concluded that because Kotecki & Radtke, when it sought permission to withdraw as Ms. Johnson's counsel, had failed to move the divorce court to enter judgment against Ms. Johnson for her unpaid legal bills, the garnishment action did not, as a matter of law, state a claim for relief. We conclude, after reviewing the applicable Wis-

---

[5] Section 767.23(3)(a), STATS., provides:

**(3)** (a)  Upon making any order for dismissal of an action affecting the family or for substitution of attorneys in an action affecting the family or for vacation of a judgment theretofore granted in any such action, the court shall prior to or in its order render and grant separate judgment in favor of any attorney who has appeared for a party to the action and in favor of any guardian ad litem for a party or a child for the amount of fees and disbursements to which the attorney or guardian ad litem is, in the court's judgment, entitled and against the party responsible therefor.

consin cases concerning § 767.23(3)(a), STATS., that the trial court erred in reaching its conclusion.

Our conclusion is guided by *Stasey v. Miller,* 168 Wis. 2d 37, 483 N.W.2d 221 (1992). In *Stasey,* the supreme court addressed the question: "[M]ay an attorney who continues to represent a client in a divorce action ask the circuit court to determine fees in lieu of bringing a separate action against the client after the divorce action ends?" *Id.* at 39, 483 N.W.2d at 222. At issue was whether the circuit court lacked competency[6]

---

[6] A litany of opinions emanating from the court of appeals and supreme court has discussed the distinction between the circuit court's constitutionally granted plenary jurisdiction over "all matters civil and criminal within this state," WIS. CONST. art. VII, § 8, and the "lesser power" to exercise subject matter jurisdiction in a particular case, which is conferred upon the circuit court by the legislature. *Michael J.L. v. State,* 174 Wis. 2d 131, 137, 496 N.W.2d 758, 760 (Ct. App. 1993); *see also Miller Brewing Co. v. LIRC,* 173 Wis. 2d 700, 705 n.1, 495 N.W.2d 660, 661 n.1 (1993); *In re B.J.N.,* 162 Wis. 2d 635, 655-57, 469 N.W.2d 845, 853 (1991); *In re L.M.C.,* 146 Wis. 2d 377, 390-92, 432 N.W.2d 588, 594 (Ct. App. 1988). The supreme court uses the phrase "subject matter jurisdiction" throughout its opinion in *Stasey v. Miller,* 168 Wis. 2d 37, 483 N.W.2d 221 (1992). Because the legislature, however, has conferred upon the circuit court the "lesser power" to adjudicate in "all actions affecting the family," *see* § 767.01(1), STATS., we conclude that the proper terminology to be used when discussing the ability of the circuit court in divorce actions to "adjudicate a specific case" is "competency" to act, rather than subject matter jurisdiction. *See Michael J.L.,* 174 Wis. 2d at 137 & n.2 496 N.W.2d at 760 & n.2. Therefore, we use the term "competency" whenever we refer to the supreme court's use of the phrase "subject matter jurisdiction" in *Stasey. See State ex rel. Parker v. Sullivan,* 184 Wis. 2d 668, 676 n.5, 517 N.W.2d 449, 451 n.5 (1994) (recent cases use "competency" in lieu of "subject matter jurisdiction").

to determine attorney fees *during* a divorce action. *Id.* at 47, 483 N.W.2d at 225. The court first acknowledged that "[w]hile the constitution and statutes grant broad jurisdiction to the circuit courts of this state . . . the 'jurisdiction [of a circuit court] in divorce actions is entirely dependent on legislative authority.' " *Id.* at 48, 483 N.W.2d at 226 (citation omitted, brackets in original).

The court then noted that while the statutes granted the circuit court competency "in all actions affecting the family," *see* §§ 767.01(1) and 767.02, STATS.,[7] "[a]warding attorney fees to an attorney who

---

[7] Sections 767.01 and 767.02, STATS. (1991-92), read in relevant part:

**767.01 Jurisdiction. (1)** The circuit courts have jurisdiction of all actions affecting the family and have authority to do all acts and things necessary and proper in such actions and to carry their orders and judgments into execution as prescribed in this chapter. All actions affecting the family shall be commenced and conducted and the orders and judgments enforced according to these statutes in respect to actions in circuit court, as far as applicable, except as provided in this chapter.

**767.02 Actions affecting the family. (1)** Actions affecting the family are:
(a) To affirm marriage.
(b) Annulment.
(c) Divorce.
(d) Legal separation (formerly divorce from bed and board).
(e) Custody.
(f) For child support, including an action under s. 767.65.
(g) For maintenance payments.
(h) For property division.
(i) To enforce or modify a judgment or order in an action affecting the family granted in this state or elsewhere.
(j) For periodic family support payments.
(k) Concerning periods of physical placement or visitation rights to children.

439

represents a party to a divorce" is not listed in the statutes as an "action affecting the family." *Stasey,* 168 Wis. 2d at 49-50, 483 N.W.2d at 226 (emphasis omitted); *see also supra,* note 6 (providing text of § 767.02, STATS.). The court noted that several statutes "expressly deal with attorney fees," *id.* at 50, 483 N.W.2d at 226, including § 767.23(3)(a), STATS., the statute at issue in the present case. The court stated:

> Section 767.23(3)(a), Stats. . . . expressly authorizes a circuit court in an action affecting the family to grant separate judgment in favor of any attorney who has represented a party to the action for the amount of fees and disbursements. This power is limited, however, to the circuit court's "making any order for *dismissal* of an action affecting the family or for *substitution* of attorneys in an action affecting the family or for *vacation* of a judgment theretofore granted in any such action." (Emphasis added.) Thus, sec. 767.23(3)(a) apparently protects attorneys only when either the court or the attorney will no longer be connected with the action affecting the family.

*Id.* (emphasis in original).

Mr. Johnson and Miller Brewing argue on appeal that once Kotecki & Radtke withdrew as Ms. Johnson's counsel, the firm was "no longer connected with the action affecting the family," *id.,* and therefore, the divorce court had competency to decide the attorney fees issue. The supreme court, however, did not end its discussion of § 767.23(3)(a), STATS., on the above point. The court addressed in dictum the applicability of § 767.23(3)(a) to situations similar to the one presented to us in the principal case, but in which the attorney

(L)   To determine paternity.

continued to represent the divorce client. The court stated:

> At oral argument counsel . . . asked us to hold that a divorce court should resolve a fee dispute between a lawyer and a divorce client during the divorce action only in the following circumstances: *the client has asked the attorney to withdraw as counsel; the attorney has sought the circuit court's permission to withdraw as counsel;* the opposing party in the divorce action objects to an adjournment or continuance of the trial; the circuit court concludes that the fee dispute arose from an "overtrial" caused by the client; the circuit court denies the attorney's motion to withdraw unless the client proceeds either *pro se* or with newly retained counsel who would proceed with the trial as scheduled; and the attorney continues to represent the client because the client does not wish to proceed *pro se* and cannot obtain new counsel under the conditions set by the circuit court. *We are not persuaded that the legislature intended the circuit court to exercise subject matter jurisdiction over a fee dispute even under these limited circumstances.*

*Id.* at 56-57, 483 N.W.2d at 229 (emphasis added). Thus, the supreme court strictly construed § 767.23(3)(a), STATS., to apply to those situations expressly set forth in the statute, i.e., orders for "dismissal of action affecting the family," "substitution of attorneys in an action affecting the family," and "vacation of a judgment theretofore granted in any such action."

Accordingly, following the guidance of the supreme court in *Stasey,* we conclude that there is nothing in § 763.23(3)(a), STATS., that gives a circuit court sitting

441

in a divorce action "precedence" over other courts to resolve a fee dispute such as the one presented to us in the principle case.[8] Therefore, Kotecki & Radtke properly instituted a separate action to recover the unpaid legal fees.[9] Hence, the trial court erred at summary judgment when it concluded that Kotecki & Radtke

[8] Kotecki & Radtke could have had the circuit court assigned to hear matters arising under chapter 767 of the Wisconsin Statutes decide the firm's entitlement to the fees at issue here. Section 767.23(3)(a), STATS., is a grant of authority to those courts assigned responsibility for exercising jurisdiction under chapter 767; § 767.23(3)(a) does not deprive circuit courts assigned to hear civil matters generally the competency to decide these types of fee disputes.

[9] We further note that the Wisconsin Constitution grants to the circuit courts plenary jurisdiction over all matters, "subject only to the appellate and supervisory powers reserved by the constitution to the court of appeals and the supreme court," *Eberhardy v. Circuit Court for Wood County*, 102 Wis. 2d 539, 553, 307 N.W.2d 881, 887 (1981): "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state." WIS. CONST. art. VII, § 8. Although article VII, § 8, "allows for a legislative reallocation of jurisdiction from the circuit court to another court[, i]t does not permit the legislature to divest the constitutional grant of jurisdiction from the unified court system; and under the unified court system . . . original jurisdiction is vested wholly in the circuit court." *Eberhardy*, 102 Wis. 2d at 550, 307 N.W.2d at 886. An action to recover attorney fees is, obviously, within the plenary jurisdiction of the circuit court, and there is nothing in either the constitution or the statutes that require that attorney fees in matrimonial actions be brought before the judge assigned to hear those actions. Although § 767.23(3)(a), STATS., requires, under the circumstances there specified, the judge to "grant separate judgment" for attorney fees and guardian *ad litem* fees, the statute does not prohibit alternative means by which an attorney may seek to recover for his or her fees.

failed to follow the proper procedure for recovering the unpaid legal fees and, thus, did not assert a valid claim for relief.

## 2. *The sufficiency of the garnishment complaint.*

We next must independently review the pleadings in order to determine whether Kotecki & Radtke has stated a valid claim for relief. *See Green Springs Farms,* 136 Wis. 2d at 315-17, 401 N.W.2d 816, 820-21. The sufficiency of a garnishment complaint after judgment is controlled by § 812.05(2), STATS., which provides:

> **(2)** The garnishee complaint in a garnishment action after judgment must allege the existence of the grounds for garnishment mentioned in s. 812.02 (1)(b), and the name and location of the court, case number, if any, date of entry and amount of the judgment on which the garnishment action is based, the amount of the plaintiff's claim against the defendant and disbursements, not to exceed $40, above all offsets known to the plaintiff, and that plaintiff believes that the named garnishee is indebted to or has property in his or her possession or under his or her control belonging to the defendant (naming him or her) and that the indebtedness or property is, to the best of plaintiff's knowledge and belief, not exempt from execution.

Our review of the sufficiency of Kotecki & Radtke's garnishee complaint leads us to conclude that it comports with the requirements of § 812.05(2). In reviewing the sufficiency of the complaint, we accept all facts in Kotecki & Radtke's pleadings, and all reasonable inferences therefrom, as true. *See Prah v. Maretti,* 108 Wis. 2d 223, 229, 321 N.W.2d 182, 186

(1982). The complaint alleges the existence of the default judgment for $2,858.30 "entered in favor of the plaintiff and against the defendant in case number 93CV004119, on the 11th day of June, 1993" and that "an execution against the property of the defendant has issued or is issuable." The complaint also names Mr. Johnson as a marital property defendant pursuant to § 812.01, STATS. Finally, the complaint alleges that Kotecki & Radtke "believes" that Miller Brewing is indebted to Ms. and Mr. Johnson, and that the indebtedness is "not exempt from execution." Therefore, we conclude Kotecki & Radtke has stated a valid claim for relief.

3. *Existence of any genuine issues of material fact.*

■

As part of its appeal, Kotecki & Radtke also asks us to determine whether Mr. Johnson's wages from Miller Brewing can be garnished as marital property in order to satisfy the default judgment resulting from Ms. Johnson's unpaid attorney's fees. We conclude that this issue is not properly before us at the summary judgment stage because genuine issues of material fact remain unresolved. *See Home Ins. Co. v. Phillips*, 175 Wis. 2d 104, 110, 499 N.W.2d 193, 196 (Ct. App. 1993). For instance, it is unclear whether Ms. Johnson possesses any non-marital property such as wages that can be used to satisfy the judgment. Additionally, it is unclear from the pleadings and affidavits at what point the Johnsons' final divorce judgment was entered and whether the circuit court issued any orders regarding payment of contribution for attorney fees in the final

divorce judgment.[10] Until there is further factual eluci-
dation on such matters at the trial court level, we
cannot address the issue posed by Kotecki & Radtke on
appeal. We therefore conclude that the entire garnish-
ment action is not appropriate for resolution at the
summary judgment stage and the case must be
remanded to the trial court for further proceedings.

## III. LOCAL RULE SANCTION

Finally, Kotecki & Radtke argues that the trial
court erred when it refused to disregard a response
brief submitted by Mr. Johnson and Miller Brewing in
violation of the time limits set forth in the local court
rules. The firm argues that the trial court should have
disregarded the brief and reached its decision on sum-
mary judgment solely on the basis of the firm's timely
filed pleadings and affidavits. We conclude that this
argument has no merit.

The supreme court, under its inherent power to
administer the judicial system in the State of Wiscon-
sin, has created judicial administrative districts for
"the purpose of administering the court system." SCR
70.17. The supreme court also appoints chief judges of
each judicial administrative district, SCR 70.18, to
whom the supreme court delegates the authority to
"adopt . . . local rules not in conflict with the uniform
judicial administrative rules." SCR 70.34. The Chief
Judge of the First Judicial Administrative District
(comprising the circuit courts in Milwaukee County)
has promulgated such rules and we have previously
concluded that these local rules are "valid and enforce-

---

[10] We note the temporary orders issued by the family court
commissioner state that "no order" concerning attorney fees
was resolved at the preliminary stages of the divorce action. *See
supra*, note 1; *see generally* § 767.23(1)(d), STATS.

able." *See Community Newspapers, Inc. v. City of West Allis*, 158 Wis. 2d 28, 33, 461 N.W.2d 785, 787 (Ct. App. 1990).

LOCAL RULE 364 governs summary judgment and dismissal motions in the First Judicial Administrative District. Specifically, it gives a respondent to a summary judgment motion fifteen days from "the service of the movant's motion" to serve and file "a brief, affidavits, or other supporting documents, or waive in writing the right to do so." LOCAL RULE 364(b).[11] If the respondent fails to file such documents with the fifteen-day period, "it shall be presumed that [the] respondent has waived the right to do so." *Id.*

LOCAL RULE 367 provides further sanctions for untimely filings:

### 367. UNTIMELY SERVICE AND/OR FILING

Any motion, brief, affidavit, or other supporting documents served and/or filed in an untimely fashion may be disregarded by the court and a decision may be based on the record as timely filed. The time periods set forth in these rules may be altered by leave of the court for good cause shown by the party requesting a special exception.

Kotecki & Radtke contends that our decision in *Community Newspapers* mandates that a brief or other pleading filed in violation of the local rules *must* be disregarded by the trial court, and therefore the trial

---

[11] LOCAL RULE 364(b) provides:

(b) A respondent shall have 15 days from the service of the movant's motion within which to serve and file a brief, affidavits, or other supporting documents, or waive in writing the right to do so. If the respondent fails to file any brief, affidavits, or other supporting documents or a waiver of the same within the 15-day period, it shall be presumed that respondent has waived the right to do so.

court *must* reach its decision solely on the basis of those items in the record that were timely filed. Kotecki & Radtke then argues that the trial court erred when it considered Mr. Johnson and Miller Brewing's untimely filed response brief to the summary judgment motion.

Nothing in *Community Newspapers* commands such a result. At issue in *Community Newspapers* was whether a trial court *could* refuse to consider a pleading untimely filed under the local rules. *Community Newspapers,* 158 Wis. 2d at 31, 461 N.W.2d at 787. We concluded that "the authority of the circuit courts to . . . apply local rules is based upon the courts' inherent power to control the disposition of the cases before them." *Id.* at 32, 461 N.W.2d at 787. Thus, the trial court in *Community Newspapers* was well within its inherent authority to apply the local rules and disregard an untimely filed pleading. *Id.* at 33, 461 N.W.2d at 787.

The application of local rules to the particularities of individual cases is better left to the wide discretion of the trial court in controlling the disposition of the cases before them. For this court to mandate that the trial court unblinkingly disregard all untimely filed pleadings and affidavits would be counter-productive to the orderly judicial disposition of the cases brought before the trial court. Further, the express language of LOCAL RULE 367 provides that a trial court's decision to disregard a pleading or document as a sanction for an untimely filing is a discretionary act. LOCAL RULE 367 reads: "Any motion, brief, affidavit, or other supporting documents served and/or filed in an untimely fashion *may be disregarded* by the court and a decision *may be based* on the record as timely filed." A general rule of

statutory construction is that the word "may" is construed as permissive or allowing discretion. *See Rotfeld v. DNR,* 147 Wis. 2d 720, 726, 434 N.W.2d 617, 620 (Ct. App. 1988). Accordingly, we will reverse a trial court's decision on whether to sanction a party by disregarding an untimely filed pleading or supporting document under the local rules only if the trial court erroneously exercises its discretion. To properly exercise its discretion, the trial court's decision must be "consistent with the facts of record and established legal principles." *Lievrouw v. Roth,* 157 Wis. 2d 332, 358-59, 459 N.W.2d 850, 859-60 (Ct. App. 1990).

We conclude that the trial court properly exercised its discretion when it denied Kotecki & Radtke's request to disregard Mr. Johnson and Miller's untimely response brief. The court determined that neither the parties nor the court was prejudiced by the untimely filing and that the court and opposing counsel had sufficient time to review both sets of pleadings and affidavits before the summary judgment hearing. Further, in lieu of disregarding the untimely brief, the court assessed $100 in costs to Mr. Johnson and Miller Brewing as a sanction. These actions were well within the trial court's wide discretion to control the disposition of the cases before it.

## IV. SUMMARY

In sum, we conclude the trial court improperly applied the law when it dismissed Kotecki & Radtke's complaint at summary judgment. Further, while we conclude Kotecki & Radtke's complaint states a valid claim for relief, we also conclude that genuine issues of material fact remain and, therefore, we must reverse the order and remand the matter to the trial court for

additional proceedings. Finally, we conclude that the trial court's refusal, pursuant to the local rules, to disregard an untimely response brief was a proper exercise of the court's discretion.[12]

*By the Court.*—Order reversed and cause remanded with directions.

FINE, J. (*concurring*). I join in the majority decision, but write separately to point out the following:

1.  On page 11, the majority writes:

> The supreme court, however, did not end its discussion of § 767.23(3)(a), STATS., on the above point. The court addressed in dictum the applicability of § 767.23(3)(a) to *situations similar to the one presented to us in the principal case, but in which the attorney continued to represent the divorce client.*

(Emphasis added.) I do not understand how you can have a "situation[ ] similar to the one presented to us in the principal case," which turns on the *withdrawal* of attorneys with requisite consent of the trial court, "but in which the attorney continued to represent the divorce client."

---

[12] As a further note, Kotecki & Radtke's brief falls short of compliance with the rules of appellate procedure. We direct counsel's attention to RULE 809.19(1)(d), STATS., which requires that an appellant's brief contain "a statement of facts relevant to the issues presented for review, with appropriate references to the record." The absence of a statement of facts places an undue burden on the resources of the court and lengthens the time required for resolution of an appeal.